412 F.2d 827
 Milton GOLDMAN, Creditor-Appellant,
v.
Francis J. D'AMANDA, Trustee-Appellee. In re CANANDAIGUA ENTERPRISES CORPORATION, and Finger Lakes Racing Association, Inc., Debtors.
 No. 441.
 Docket 32637.
 United States Court of Appeals Second Circuit.
 Argued March 12, 1969.
 Decided May 22, 1969.
 
 Sydney Krause, New York City (Harris, Beach, Wilcox, Dale & Linowitz, Rochester, N. Y., and Goldman & Drazen, New York City, on the brief), for creditor-appellant.
 Louis D'Amanda, Chamberlain, D'Amanda, Bauman, Chatman & Oppenheimer, Rochester, N. Y., for trustee-appellee.
 Arnold Weiss, Buffalo, N. Y. (Raichle, Banning, Weiss and Halpern, Buffalo, N. Y.), for appellee Emprise Corp.
 Richard V. Bandler, Assoc. Regional Admin'r, Securities and Exchange Commission, New York City (Philip A. Loomis, Jr., Gen. Counsel, David Ferber, Sol., Paul Gonson, Asst. Gen. Counsel, Securities and Exchange Commission, Washington, D. C., on the brief), for appellee Securities and Exchange Commission.
 Before MOORE, KAUFMAN and FEINBERG, Circuit Judges.
 MOORE, Circuit Judge:
 
 
 1
 Canandaigua Enterprises Corporation and its subsidiary, Finger Lakes Racing Association, Inc. (for purposes of this appeal they may be considered as one) own and operate a race track in central New York State. They are in the process of reorganization under Chapter X of the Bankruptcy Act and will be referred to collectively as the "debtor". The debtor-in-possession has been operating the track since the end of 1964. In November 1967 the Trustee requested that the district court find: (1) that the debtor is insolvent; (2) that its assets be sold at public auction; and (3) that an upset price of $4,000,000 cash be fixed.
 
 
 2
 By Order (March 25, 1968) the district court, after much testimony and many exhibits had been placed before it, held: (1) that the debtor is insolvent; (2) "that the Goldman Plan is not fair and equitable nor feasible" for reasons set forth in a report of the Securities and Exchange Commission (SEC) which reasons it adopted; (3) that it declined to approve the Petrossi Plan for specified reasons; (4) that it declined to approve the Emprise Corporation Plan filed on February 26, 1968; and (5) that it approved only the Trustee's Amended Plan of Reorganization filed January 8, 1968 (and not the Abelove Plan filed November 13, 1967) for reasons stated in the court's memorandum.
 
 
 3
 The appeal comes before this court by a notice of appeal dated April 18, 1968 and is taken by "Milton Goldman, as creditor and stockholder" of the debtor. Three subjects of appeal are therein set forth: (1) the determination that the debtor is insolvent; (2) "that the Goldman Plan is not fair and equitable nor feasible"; and (3) the approval of the Trustee's Amended Plan.
 
 
 4
 This brief background illustrates the narrowness of the issues on this appeal and likewise the limited nature of the decision thereon.
 
 
 5
 The Memorandum of the SEC dated February 6, 1968 (and the evidence adduced on the hearings) was a vital factor in the district court's decision. That Memorandum summarized the capital structure of the debtor, its earnings, its assets and liabilities, the proposed plans (Trustee's, Goldman's and "Abelove's"), the testimony and theories of the valuation experts, the fairness and feasibility of the respective plans and concluded that the Goldman Plan was "neither fair and equitable nor feasible" although it could be made fair and equitable by drastic amendments; that the Abelove Plan although fair, equitable and feasible had financing uncertainties; and that the Trustee's Plan is fair and equitable with no problems of feasibility if an upset price were fixed. Thus upon the SEC's valuation analysis and "on all the evidence" the district court found the debtor to be insolvent. Since the facts as of the time of the court's decision clearly support its conclusions, there should be no hesitancy in affirming were it not for the fact that appellant Goldman, appellee Trustee and appellee Emprise Corporation (Emprise) proceeded to brief and argue the case as if the Order of March 25, 1968, the only Order mentioned in the notice of appeal, were ancient history, and to bring this court up-to-date they inform us in appellant's Appendix of a Sunshine Mining Company (Sunshine) plan filed on November 27, 1968. Apparently six plans in all and amendments thereto have been referred to the SEC and reports thereon made. Under date of December 23, 1968 the SEC issues its "Fourth Supplemental Memorandum of the Securities and Exchange Commission on Plans of Reorganization" in which it analyzes the Sunshine Plan and the Emprise Plan. As a result it concluded that "Sunshine's plan is both `fair and equitable' and `feasible'. Accordingly, the Sunshine plan should be approved." On January 8, 1969 an Order approved the Sunshine Plan. Emprise filed its notice of appeal thereto on February 4, 1969. The Emprise claim for damages was disallowed on March 5, 1969 and on March 14, 1969 the Sunshine Plan was again approved. A notice of appeal from the Orders of March 5th and March 14th has been filed. This appeal (from the March 25, 1968 Order) was argued on March 12, 1969 and permission given to file additional briefs up to March 19, 1969.
 
 
 6
 How do all these proceedings affect this appeal?
 
 
 7
 Appellant Goldman argues that the debtor is not insolvent and urges that a proper evaluation of the debtor's property and a fair capitalization based upon reasonably anticipated earnings would establish solvency. Naturally the common stockholders are reluctant to have their investment wiped out — and it should not be if there is any likelihood of salvage. On the other hand they must have been aware — particularly in a race track investment — that every horse in the race could not win.
 
 
 8
 Little purpose would be served by reviewing the many reorganization decisions wherein valuation theories and security priorities are fully discussed. It is tempting in retrospect and with the wisdom of hindsight to think of the fabulous St. Louis-Southwestern ("Cotton Belt"); the twenty-year Missouri Pacific which passed through many economic cycles and vicissitudes; the many mid-western railroads, stockholders of which were wiped out; the ill-fated New Haven; and the court's suggestion of "contingency certificates" in Silesian-American.* They all merely point to the fact that over protracted periods of time the fortunes of various companies change for better or for worse. It may well be that the first five years of race track operation are the least lucrative. But creditors do not have to wait forever to assert their legal rights, although judging by the appeals involving this reorganization currently pending before this court, the last chapter is yet to be written. From papers filed in this court, it would appear that the district court's approval of the Sunshine Plan and its rejection of the Emprise claim are still to be reviewed on appeal.
 
 
 9
 As previously stated in this appeal from the Order of March 25, 1968, finding insolvency and rejecting the Goldman Plan, the appellant, the appellees and the SEC all discuss at some length the Sunshine and amended Emprise plans filed subsequently. The merits of these plans are not now before us. Accordingly, we do no more than to decide that on the law and facts then before the court, the Order of March 25, 1968 should be affirmed.
 
 
 
 Notes:
 
 
 *
 Conway v. Silesian-American Corp., 186 F.2d 201, 211 (2d Cir., 1950)